FILED

2015 OCT 22 PM 3: 42

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
GENERAL JURISDICTION
JACKSONVILLE DIVISION

Addreisha Shirliea Jones,
as Personal Representative of the
Estate of JACKIE JONES, JR., deceased,
and in Addreisha Shirliea Jones'
capacity as an Individual,

3:15-cv-1266-J-20PDB

Plaintiff,

v.

Sea Star Line, LLC
Tote Services, Inc., &
Michael Davidson,

Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Addreisha Shirliea Jones as Personal Representative of the Estate of JACKIE JONES, JR., deceased, and in Addreisha Shirliea Jones' capacity as an individual and for her minor children ("Plaintiff"), sues Defendants, Sea Star Line, LLC ("Sea Star"), Tote Services, Inc., and Michael Davidson, (collectively "Defendants"), and in support thereof alleges:

### PRELIMINARY STATEMENT

1. This is an action for the wrongful death of Jackie Jones, Jr., a seaman killed while working aboard the "El Faro", a cargo vessel, at all material times, captained by Defendant Michael Davidson and owned, operated and/or managed by Defendants Sea Star Line, LLC and/or Tote Services, Inc.

2. Defendants' negligence in maintaining and/or operating and/or managing the M/V El Faro, its failure to provide a seaworthy Vessel, and its decisions to sail into treacherous weather were the direct, proximate and legal cause of Jackie Jones, Jr.'s death at sea on October 1, 2015 when the El Faro sank.

3. This action is brought by Jackie Jones, Jr.'s widow and personal representative Addreisha Shirliea Jones, on behalf of the Estate of her deceased husband, herself, and their four children.

4. Mrs. Jones is the statutory beneficiary entitled to bring this suit on behalf of the decedent's estate and the aforementioned beneficiaries pursuant to the Jones Act, 46 U.S.C. §688, and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§761-768 and the General Maritime Law.

## PARTIES, JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as certain causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 688, the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761-768.

6. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00 USD), exclusive of interest, attorneys' fees, and costs, and is between citizens of different states and a citizen of a foreign country.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)-(c).

8. This complaint asserts a cause of action for the wrongful death of Jackie Jones, Jr., a citizen of the United States and resident of Duval County, Florida, at the time of his death and for his beneficiaries who are:

a. Addreisha Shirliea Jones, a resident of Duval County, Florida, and the surviving spouse of the decedent Jackie Jones, Jr.;

b. Jackiecia Gwenika Jones, Jackie Jones, Jr.'s daughter;

c. Jacquiecia Latia Jones, Jackie Jones, Jr.'s daughter;

d. Jackie Robert Jones III, Jackie Jones, Jr.'s son;

e. Meco Devonshae Jones, Jackie Jones, Jr.'s daughter; and

f. The Decedent's Estate.

9. The El Faro (or the "Vessel") was a 736.8 foot United States Coast Guard Documented Vessel, Official Number 561732, with a hailing port of San Juan Puerto Rico, and was in service as a steel Freight Ship identified under IMO Number 7395351 transporting cargo between ports of the United States, including Puerto Rico.

10. The Vessel was owned, as a matter of record, by SEA STAR LINE LLC ("Sea Star"), a Delaware corporation with a principal place of business in San Juan, Puerto Rico who maintains an address by which it conducts continuous and systematic business in the state of Florida at 10550 Deerwood Park Blvd. Suite 509 Jacksonville, FL 32256.

11. The Vessel was beneficially owned by its manager and operator, the Defendant Tote Services, Inc. ("Tote"), a Washington (state) corporation whose principal place of business is either San Juan Puerto Rico or Alaska and who maintains an address by which it conducts continuous and systematic business in the state of Florida at 10550 Deerwood Park Blvd. Suite 502 Jacksonville, FL 32256.

12. Defendant Michael Davidson was the Captain of El Faro, and at all material times, a resident of Duval County, who continuously conducted business in the state of Florida.

13. Jackie Jones, Jr., the deceased, was a professional mariner and was acting within the course and scope of his employment with Defendants Sea Star and Tote as an able seaman of the Vessel El Faro at all times material hereto.

14. Addreisha Shirliea Jones, the personal representative of the Estate of Jackie Jones, Jr. and as an individual for herself and her children, is a citizen of the United States and resident of Duval County, Florida and is otherwise sui juris.

15. Defendant Sea Star Lines, LLC is subject to personal jurisdiction of this Court pursuant to Fla. Stat §§ 48.193(1)(a), (1), (2), and (6) and (f) and §48.193(2);

16. Defendant Tote Services, Inc. is subject to personal jurisdiction of this Court pursuant to Fla. Stat §§ 48.193(1)(a), (1), (2), and (6) and (f) and §48.193(2);

17. Defendant Michael Davidson is subject to personal jurisdiction of this Court pursuant to Fla. Stat §§ 48.193(1)(a), (1), (2), and (6) and (f) and §48.193(2);

## GENERAL ALLEGATIONS

18. Jackie Jones, Jr. was employed by Tote and/or Sea Star to act as a professional seaman of the Vessel El Faro.

19. The El Faro plied the waters of the United States, the Atlantic Ocean and the Western Caribbean as a cargo vessel transporting and delivering trailers, containers, and vehicles, mainly between Jacksonville, Florida and Puerto Rico.

20. The Vessel was overdue for deferred repair work and had not been well repaired in the past; former crewmembers noted the work done by Sea Star and Tote was below industry standard.

21. Upon information and belief there were known issues with the steel of the Vessel, including electrolysis and resulting corrosion, electrical issues, and its machinery including the boilers needed service; these issues related to the condition of the El Faro

which put the safety of the Vessel and therefore its crew in danger, especially in heavy weather situations where the Vessel could foreseeably lose power and/or break apart.

22. Further, upon information and belief, the Vessel did not have working emergency equipment such as hydrostatic Emergency Position Indicating Radio Beacons (E.P.I.R.B.S.) that would immediately relay the Vessel's location to rescue teams upon peril.

23. The Vessel was also routinely overloaded with cargo, including vehicles, that created hazardous conditions, which was especially dangerous in poor weather conditions thereby effecting the Vessel's stability, to wit: its availability to right itself after listing.

24. Even in unremarkable weather, former crewmembers noted that the Vessel would take on excess water into spaces not designed to do so, a fact known to all Defendants.

25. Dangerous weather patterns and conditions were known, considered and ultimately ignored by the Defendants prior to the Vessel leaving port at night September 29, 2015 on its final fateful voyage, including but not limited to Hurricane Joaquin.

26. Moreover, even after the Vessel left port, there were clear opportunities to reasonably alter the vessels route, including diverting to safe harbor, that were disregarded.

27. Each and all of these conditions were known to the Defendants who ultimately chose money over safety when they decided to set sail and continue course, putting the lives of the crew at risk, including Jackie Jones, Jr.

28. The combination of the inadequate physical condition of the Vessel, the overloading of the Vessel with cargo, and the decision to set sail and continue onward into the teeth of known treacherous weather all contributed to the sinking of the Vessel and to the death of the crew including Jackie Jones, Jr.

29. These conditions were all known to the Defendants prior to the Vessel leaving port on September 29, 2015 and/or before its last clear chance to alter the vessel's course, including finding safe harbor.

30. The Defendants could have prevented this disaster had they used reasonable care.

31. On or about September 29, 2015, considering and/or ignoring the conditions of the Vessel, the improperly or overloaded cargo, and the weather conditions, the El Faro set sail from Jacksonville, FL towards Puerto Rico.

32. In less than 36 hours, due to its condition, its improperly and/or overloaded cargo, and/or the weather encountered, the Vessel began breaking up, taking on water and ultimately sank.

33. The Vessel has not been located and no survivors were found.

34. The United States Coast Guard has issued notes to each of the next of kins for the crewmembers, presuming them to have perished at sea as a result.

35. Defendants could have prevented this incident by maintaining the vessel in proper working condition, by not improperly and/or overloading the Vessel with cargo including vehicles, and by using reasonable care to prevent the Vessel from sailing into a known dangerous weather pattern and/or to turn the Vessel around as the weather worsened, altering route or finding safe harbor.

36. After weeks of search and rescue by the United States Coast Guard and certain Vessels of the United States Navy, just one crewmember's remains were recovered, and none of the remaining crew or the Vessel were found.

37. The Vessel sank on October 1, 2015 on its way from Jacksonville to Puerto Rico at an unknown location.

38. All crew perished.

## COUNT I:
## SURVIVAL ACTION FOR NEGLIGENCE FOR PRE-DEATH PAIN AND SUFFERING UNDER THE JONES ACT AGAINST DEFENDANTS TOTE AND/OR SEA STAR

39. Plaintiff re-adopts and re-alleges Paragraphs 1 through 38 as if fully set forth herein, and further alleges as follows:

40. Defendants Tote and/or Sea Star were at all material times the Jones Act Employers of the Decedent, Jackie Jones, Jr.

41. Defendants owed Jackie Jones, Jr. a duty of reasonable care for his safety, including care to maintain the Vessel in a reasonably safe condition and to operate safely.

42. Defendants breached this duty and were negligent by providing a Vessel that was unsafe and unfit due to conditions created by Defendants' conduct, including, but not limited to failure to perform reasonably necessary repairs; accepting improper, below industry standard repairs on the Vessel; overloading or improperly loading the Vessel; ordering the Vessel to sail despite knowing that the Vessel was headed into a Hurricane and/or treacherous weather; failure to turn the Vessel around or to find reasonable safe harbor after setting sail from Jacksonville as weather conditions continued to worsen.

43. Defendants' breach of their duties as described above caused Jackie Jones, Jr. to suffer bodily injury, physical pain, emotional distress and mental anguish before he perished.

44. The Jones Act, 46 U.S.C. § 688, provides the remedy of a survival action for the decedent's pre-death pain and suffering.

WHEREFORE the Plaintiff, as personal representative of the Estate of Jackie Jones, Jr., demands judgment against Defendants for the Deceased's pre-death pain and suffering together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as

permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT II:
## UNSEAWORTHINESS UNDER GENERAL MARITIME LAW
## AGAINST DEFENDANTS SEA STAR AND/OR TOTE

45. Plaintiff readopts and re-alleges Paragraphs 1 through 38 as if fully set forth herein, and further alleges:

46. The general maritime law permits claims for wrongful death of a seaman by the seaman's personal representative based on unseaworthiness of the vessel on which the seaman worked, to the extent that unseaworthiness occurred in state territorial waters.

47. During the time period in which Jackie Jones, Jr. was on the Defendants' Vessel, and in the territorial waters of the United States, the unseaworthiness of Defendants' Vessel was a legal cause of injury and damage to Plaintiff, Defendants breached this duty and were negligent by providing a Vessel that was unsafe and unfit due to conditions created by Defendants' conduct, including, but not limited to failure to perform reasonably necessary repairs; accepting improper, below industry standard repairs on the Vessel; overloading or improperly loading the Vessel; ordering the Vessel to sail despite knowing that the Vessel was headed into a Hurricane and/or treacherous weather; failure to turn the Vessel around or find reasonable safe harbor after setting sail from Jacksonville as weather conditions continued to worsen.

48. The unseaworthiness of the Vessel played a substantial part in bringing about or actually caused the Decedent harm and then death, and the harm and then death was either a direct result or a reasonably probable consequence of the unseaworthiness.

49. As a result, Jackie Jones, Jr.'s Estate and dependent relatives suffered and will suffer in the future: loss of support; loss of the services of the Deceased; loss of nurture, guidance,

care and instruction; and loss of inheritance. The Estate has suffered and will suffer in the future: loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors, and/or loss of the prospective net accumulations of the estate, which might reasonably have been expected but for the wrongful death.

WHEREFORE the Plaintiff demands judgment against Defendants TOTE and SEA STAR, for any and all compensatory damages, loss of future earnings, punitive damages, pain and suffering, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT III:
## CLAIM FOR WRONGFUL DEATH
## UNDER DOHSA AGAINST ALL DEFENDANTS

50. Plaintiff readopts and re-alleges Paragraphs 1 through 38, as if fully set forth herein, and further alleges:

51. DOHSA permits a claim for wrongful death of a seaman by the seaman's personal representative based upon negligence and also the unseaworthiness of the vessel on which the seaman worked, to the extent the negligence and/or unseaworthiness occurred on the high seas beyond a marine league from the shore of any state or the Territories or dependencies of the United States, which is where Jackie Jones, Jr.'s death occurred.

52. The Defendants, at all material times, had the absolute, non-delegable duty to provide a seaworthy vessel reasonably fit for their intended use.

53. The Defendants also had the duty to use reasonable care for the safety of the crew, including but not limited to canceling trips and/or finding safe harbor or safe routes to avoid dangerous weather known to them.

54. During the time period in which the Deceased was on the Defendants' Vessel, and on the high seas beyond a marine league from the shore of any state or the Territories or dependencies of the United States, Tote and Sea Star's negligence and the unseaworthiness of the Vessel were a direct, legal and proximate cause of injury and damage to Plaintiff, including, without limitation, by reason of one or more of the following: failure to perform reasonably necessary repairs; accepting improper, below industry standard repairs on the Vessel; overloading or improperly loading the Vessel; failing to load the Vessel properly; ordering the Vessel to sail despite knowing that the Vessel was headed into a Hurricane and treacherous weather; failure to turn the Vessel around or find reasonable safe harbor after setting sail from Jacksonville as weather conditions continued to worsen.

55. The negligence of the Defendants and the unseaworthiness of the Vessel caused Decedent's death.

56. As a result, Jackie Jones, Jr. and dependent relatives will suffer in the future: loss of support; loss of the services of the Deceased; loss of nurture, guidance, care and instruction; and loss of inheritance. The Estate has suffered and will suffer in the future: loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors, and/or loss of the prospective net accumulations of the estate, which might reasonably have been expected but for the wrongful death.

WHEREFORE the Plaintiff demands judgment against Defendants, Tote, Sea Star and Davidson, for any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT IV:
## NEGLIGENCE CAUSING WRONGFUL DEATH
## UNDER THE JONES ACT
## AGAINST TOTE AND/OR SEA STAR

57. Plaintiff readopts and re-alleges Paragraphs 1 through 38, as if fully set forth herein, and further alleges:

58. Defendants Tote and Sea Star were at all material times the Jones Act Employers of the Decedent, Jackie Jones, Jr.

59. The Jones Act permits a claim for wrongful death of a seaman by the seaman's personal representative based upon negligence.

60. Defendants breached this duty and were negligent by providing a Vessel that was unsafe and unfit due to conditions created by Defendants' conduct, including, but not limited to failure to perform reasonably necessary repairs; accepting improper, below industry standard repairs on the Vessel; overloading the Vessel; failing to load the Vessel properly; ordering the Vessel to sail despite knowing that the Vessel was headed into a Hurricane and/or treacherous weather; failure to turn the Vessel around or find reasonable safe harbor after setting sail from Jacksonville as weather conditions continued to worsen.

61. As a result of Defendants' negligence, the Vessel sank and Jackie Jones, Jr. perished at sea.

62. As a further result, Jones' Estate and dependent relatives suffered and will suffer in the future: loss of support; loss of the services of the Deceased; loss of nurture, guidance, care and instruction; and loss of inheritance. The Estate has suffered and will suffer in the future: loss of earnings of the deceased from the date of injury to the date of death, less

lost support of survivors, and/or loss of the prospective net accumulations of the estate, which might reasonably have been expected but for the wrongful death.

WHEREFORE, Plaintiff demands judgment against Defendants for any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT V: NEGLIGENCE AGAINST DAVIDSON

63. Plaintiff readopts and re-alleges Paragraphs 1 through 38, as if fully set forth herein, and further alleges:

64. Michael Davidson was the Captain of the Vessel El Faro.

65. Davidson negligently navigated the El Faro out to sea despite warnings of treacherous weather including an impending hurricane.

66. Capt. Davidson knew prior to leaving port that there was a tropical storm in the Atlantic that was intensifying to hurricane strength.

67. Capt. Davidson knew he would directly confront the storm days prior to leaving port on its intended voyage to Puerto Rico.

68. Capt. Davidson failed to cancel the trip, to take a safe route and/or to find safe harbor to avoid the direct impact of the storm.

69. Capt. Davidson, negligently entered the path of dangerous storm knowing the unseaworthy condition of the El Faro prior to leaving port.

70. Capt. Davidson negligently permitted the El Faro sail out to sea despite being in an unseaworthy condition to handle the conditions of a violent storm.

71. Capt. Davidson negligently failed to comply with the rules and practice of general maritime law to exercise reasonable care under the circumstances for the safety of passengers/business invitees traveling aboard the El Faro.

72. The acts or omissions of Defendant, Capt. Davidson were a direct, proximate, and legal cause of the incident which occurred on or about October 1, 2015, which resulted in the death of Jackie Jones, Jr.

73. As Captain of the El Faro, Defendant Michael Davidson owed the crewmen and seamen aboard the El Faro the highest degree of care given the circumstances and risks of navigating the El Faro through high seas and into a heavy winds and 30 plus foot waves in the days leading up to and including October 1, 2015.

74. Plaintiff has incurred damages as a result.

75. As a direct and proximate cause of Davidson's negligent acts, the Plaintiff including the Estate seeks recovery for the pre-death pain and suffering endured by decedent, as well as for his severe emotional distress, and for loss of support and services suffered by the Plaintiff for the Estate, on her behalf and for the children.

Respectfully Submitted,                    Dated: October 22, 2015

| MOORE & COMPANY, P.A. | KAGAN LAW FIRM, PL |
|---|---|
| Scott A. Wagner, Esq. | Elizabeth P. Kagan |
| Florida Bar No.: 10244 | Florida Bar No.: 330779 |
| Michael T. Moore, Esq. | Christopher A. Kagan |
| Florida Bar No.: 207845 | Florida Bar No.: 94663 |
| Co-Counsel for Plaintiff | Andrew T. Kagan, Of Counsel |
| 355 Alhambra Circle, Suite 1100 | Florida Bar No: 26291 |
| Coral Gables, FL 33134 | Co-Counsel for Plaintiff |
| Telephone: (786) 221-0600 | 8191 College Parkway, Suite 303 |
| Facsimile: (786) 221-0601 | Ft Myers, FL 33919 |
| swagner@moore-and-co.com | Telephone: 239-466-1161 |
| | Facsimile: 239-466-7226 |
| **/s/ Scott A. Wagner, Esq.** | liz@kagan-law.com |
| | **/s/ Elizabeth P. Kagan** |